**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                :
SILVINA BARBOZA, et al.,        :
                                :    CIVIL ACTION NO. 07-635 (MLC)
      Plaintiffs,               :
                                :    MEMORANDUM OPINION
      v.                        :
                                :
GREATER MEDIA NEWSPAPERS,       :
et al.,                         :
                                :
      Defendants.               :
_____:
```

**COOPER, District Judge**

Plaintiffs, Silvina Barboza ("Barboza") and Kenneth Barboza
(collectively, "plaintiffs"), allege claims under (1) the
Employee Retirement Income Security Act of 1974 ("ERISA"), 29
U.S.C. § 1001, et seq., (2) the New Jersey Law Against
Discrimination ("NJLAD"), N.J.S.A. § 10:5-1, et seq., and (3) New
Jersey common law of (a) violation of public policy, and (b)
intentional infliction of emotional distress ("IIED").  (Dkt.
entry no. 40, 2d Am. Compl.)  Defendants, Greater Media
Newspapers ("GMN") and Kevin Wittman ("Wittman") (collectively,
"defendants"), now move to dismiss certain claims of the second
amended complaint pursuant to Federal Rule of Civil Procedure
("Rule") 12(b)(6).  (Dkt. entry no. 41.)  The Court, for the

reasons stated herein, will grant in part and deny in part the motion.[1]

## BACKGROUND

Plaintiffs contend the following set of facts: Barboza, while employed by a Spanish language newspaper owned by GMN in 2005, was diagnosed with obesity by her treating physician. (2d Am. Compl., at 1-2.) Barboza was scheduled to undergo gastric bypass surgery in December 2005 to treat her obesity, and planned to use her vacation time for the surgery and recovery thereafter. (Id. at 2-3.) At this time, GMN provided health care coverage to its employees with Aetna, a health insurance company. (Id. at 2.)

Barboza, while employed at GMN, was supervised both by Wittman and Jorge Rod ("Rod"). (Id. at 2.) Barboza's "intentions with respect to her surgery were made known to [GMN] and specifically to [Rod]." (Id. at 3.) In June or July of

---

[1] Defendants moved to dismiss certain claims of the first amended complaint in June 2007. (Dkt. entry no. 13.) Plaintiffs opposed the motion. (Dkt. entry no. 18.) In March 2008, the Court denied that motion without prejudice, and granted defendants leave to renew their motion to dismiss after plaintiffs filed a second amended complaint. (Dkt. entry no. 36.) The Court also advised the parties that they could rely upon their previously filed papers in support of and in opposition to a renewed motion to dismiss by defendants. (Id.; see dkt. entry no. 13, Defs. Br.; dkt. entry no. 18, Pls. Br.; dkt. entry no. 22, Defs. Reply Br.) Defendants now move to dismiss the second amended complaint, relying on their previously filed papers. (Dkt. entry no. 41.) Plaintiffs have not responded to defendants' renewed motion to dismiss.

2005, Wittman asked Rod "if it were in fact true that [Barboza] was intending to have surgery in December and be absent from work." (Id. at 3.) Wittman was then apparently informed that Barboza was intending to use her vacation time for the surgery and recovery thereafter. (Id.) Barboza was subsequently terminated from employment in July 2005. (Id.) Further, after Barboza's termination, while she still had health insurance coverage through Aetna, she "was advised by representatives of Aetna that the coverage for [GMN] had been modified and that coverage no longer included reimbursement for gastric-bypass surgery." (Id.)

Defendants now move to dismiss the second amended complaint pursuant to Rule 12(b)(6) insofar as it asserts claims of (1) failure to provide reasonable accommodation under NJLAD (Count Two), (2) violation of public policy under New Jersey common law (Count Three), (3) retaliation under NJLAD (Count Four), (4) intentional infliction of emotional distress (Count Six), and (5) loss of consortium under state law (Count Seven). (Dkt. entry no. 41, 3-31-08 Defs. Letter.)[2]

---

[2] Defendants do not move to dismiss plaintiffs' claims under (1) NJLAD of unlawful discrimination (Count One), or (2) ERISA (Count Five). (See 3-31-08 Defs. Letter.) Further, the Court assumes the loss of consortium claim in Count Seven does not concern the ERISA claim, as ERISA preempts any such claim to the extent that it relates to Barboza's medical benefits under her health insurance plan. See LaMonica v. Guardian Life Ins. Co. of Am., No. 96-6020, 1997 WL 80991, at *6 (D.N.J. Feb. 20, 1997)

**DISCUSSION**

I.   **12(b)(6) Motion to Dismiss Standard**

The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted". Fed.R.Civ.P. 12(b)(6). On a motion to dismiss, the Court generally must accept as true all of the factual allegations in the complaint, and must draw all reasonable inferences in favor of the plaintiff. Cal. Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 134 (3d Cir. 2004); Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001). However, the Court need not credit bald assertions or legal conclusions alleged in the complaint. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997); Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)". Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

The Court may generally not "consider matters extraneous to the pleadings" when considering a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426. However, if the Court exercises discretion and permits a party to present

_____

(granting motion to dismiss as to loss of consortium claim because it "related to the processing of [plaintiff's] ERISA benefits" and thus was preempted).

matters outside the pleadings, the Court must (1) convert the motion to dismiss into one for summary judgment, and (2) allow the parties a reasonable opportunity to present all material pertinent to such a motion under Rule 56.  See Fed.R.Civ.P. 12(b).  An exception to this general rule is that the Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment.  Angstadt v. Midd-West Sch. Dis., 377 F.3d 338, 342 (3d Cir. 2004).

## II.  NJLAD Claims

### A.    Reasonable Accommodation Claim

Plaintiffs allege that defendants failed to reasonably accommodate Barboza when they terminated her employment after they were put on notice of her intention to undergo gastric bypass surgery and use her vacation time for the surgery and recovery thereafter.  (2d Am. Compl., at 3-4.)  Defendants contend that, inter alia, these factual allegations are insufficient, as plaintiffs have not alleged that (1) defendants were on notice of Barboza's purported disability, (2) Barboza requested any accommodation, and (3) defendants denied that request.  (Defs. Br., at 5.)

NJLAD requires an employer to "make a reasonable accommodation to the limitations of an employee who is a person

5

with a disability, unless the employer can demonstrate that the accommodation would pose undue hardship on the operation of the business." <u>Dicino v. Aetna U.S. Healthcare</u>, No. 01-3206, 2003 WL 21501818, at *14 (D.N.J. June 23, 2003); <u>Potente v. County of Hudson</u>, 187 N.J. 103, 110 (2006); <u>Boyce v. Lucent Techs.</u>, No. A-5929-05T2, 2007 WL 1774267, at *4 (N.J. App.Div. June 21, 2007).

An employee first must request the employer for an accommodation of the disability. <u>O'Brien v. Star Gas Propane, L.P.</u>, No. A-0358-05T3, 2006 WL 2008716, at *20 (N.J. App.Div. July 20, 2006). While there are no "magic words" that an employee must use when requesting an accommodation, the employee must clearly communicate that assistance is needed for the disability. <u>Id.</u>; <u>Tynan v. Vicinage 13 of Super. Ct.</u>, 351 N.J.Super. 385, 400 (App.Div. 2002). Once such a request is made, the employer must initiate an informal interactive process with the employee. <u>Tynan</u>, 351 N.J.Super. at 400. "This process must clearly identify the potential reasonable accommodations that could be adopted to overcome the employee's precise limitations resulting from the disability." <u>Id.</u> It is the employer who must make a reasonable effort to determine the appropriate accommodation for the employee's disability. <u>Id.</u>

Administrative regulations set out the specific requirements of the reasonable accommodation process mandated by NJLAD. <u>Potente</u>, 187 N.J. at 110-11; <u>see</u> N.J.A.C. §§ 13:13-2.5(b),

6

2.8(a).  Section 13:13-2.5(b), <u>inter</u> <u>alia</u>, (1) provides that, unless it would be an undue hardship on the operation of the business, an employer must reasonably accommodate the limitations of the employee, (2) lists examples of "reasonable accommodation", and (3) lists factors in determining whether an accommodation would be an undue hardship on the operation of the employer's business.  N.J.A.C. § 13:13-2.5(b).

"[T]here are no bright-line rules as to what constitutes a reasonable accommodation", however, and the determination as to whether an employer has failed to make a reasonable accommodation is to be done on a case-by-case basis.  <u>Id.</u>; <u>Taylor v. Virtua Health, Inc.</u>, No. 05-4271, 2007 WL 1827094, at *5 (D.N.J. June 25, 2007).  Further, an employer need not make an accommodation where it can be reasonably determined that an employee, as a result of that employee's disability, cannot perform the essential functions of the job even with reasonable accommodation.  N.J.S.A. § 10:5-2.1; <u>Viscik v. Fowler Equip. Co., Inc.</u>, 173 N.J. 1, 13 (2002); <u>Ensslin v. Twp. of N. Bergen</u>, 275 N.J.Super. 352, 363 (App.Div. 1994); N.J.A.C. § 13:13-2.8(a).

To show that a employer failed to accommodate an employee's disability in violation of NJLAD, the employee must show that the employee (1) was disabled within the meaning of NJLAD, (2) was qualified to perform the essential functions of the position, with or without accommodation, and (3) suffered an adverse

employment action because of the disability.  Dodaro v. Acme
Mkts., No. 06-387, 2006 WL 776976, at *3 (D.N.J. Mar. 27, 2006);
Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J.Super. 78, 91
(App.Div. 2001).  "Once the employee makes a facial showing of
discrimination, the burden is placed on the employer to
demonstrate that a reasonable accommodation cannot be provided to
the disabled employee."  Boyce, 2007 WL 1774267, at *5.

An employer also may be liable for failing to accommodate an
employee's disability by not engaging in the "interactive
process" of finding a reasonable accommodation for the employee.
Winters v. Sharp Elecs. Corp., No. A-6105-05T5, 2008 WL 680732,
at *10 (N.J. App.Div. Mar. 14, 2008).  To prove such a claim, the
employee must demonstrate that the (1) employer knew of the
disability, (2) employee requested accommodation or assistance,
(3) employer did not make a good faith effort to assist the
employee in seeking accommodation, and (4) employee could have
been reasonably accommodated but for the employer's lack of good
faith.  Id.

The Court will deny defendants' motion to dismiss
plaintiffs' claim under Count Two.  Plaintiffs have sufficiently
"raise[d] a right to relief above the speculative level", as they
allege that Barboza was (1) disabled by obesity, (2) performing
her job despite her disability, and would have been able to
continue to do so by using her vacation time to undergo surgery

8

and recovery thereafter, and (3) terminated after defendants were made aware of her intentions to undergo surgery and use her vacation time for the surgery and recovery thereafter. (2d Am. Compl., at 2-4). See Twombly, 127 S.Ct. at 1965. Factual issues as to whether (1) Barboza's request for accommodation was sufficient, and (2) allowing Barboza to use her vacation time for her surgery and recovery would be a reasonable accommodation should be resolved at a later juncture. See Dodaro, 2006 WL 776976, at *5 (denying 12(b)(6) motion to dismiss, as defendant denied plaintiff's request to remain in current job location, which could have been considered reasonable accommodation under NJLAD); Leshner v. McCollister's Transp. Sys., Inc., 113 F.Supp.2d 689, 693 (D.N.J. 2000) (denying motion to dismiss because it was "too early in the litigation to determine whether plaintiff's requested accommodation [of reduction in job responsibilities] was reasonable.")[3]

---

[3] Defendants state that they "do not concede that [Barboza] had or has a qualified disability or handicap" within the meaning of NJLAD. (Defs. Br., at 5 n.3.) Although the Court need not address this issue at this juncture, the Court notes that New Jersey courts have recognized that obesity can be a disability under NJLAD. See, e.g., Viscik, 173 N.J. at 17-18 (affirming Appellate Division's holding that evidence supported jury's finding that plaintiff's obesity was a disability under NJLAD); Tynan, 351 N.J.Super. at 398; Gimello v. Agency Rent-A-Car Sys., Inc., 250 N.J.Super. 338, 365 (App.Div. 1991) (affirming state agency's finding of unlawful employment discrimination under NJLAD due to plaintiff's obesity).

### B.   Retaliation Claim

Plaintiffs allege that defendants' termination of her employment was done in retaliation for her expressed intention to undergo gastric bypass surgery for obesity.  (2d Am. Compl., at 5.)  Defendants argue that this claim fails because plaintiffs "does not and cannot allege" that Barboza engaged in a protected activity.  (Defs. Br., at 6.)

It is unlawful for "any person to take reprisals against any person because that person has opposed any practices or acts" which NJLAD prohibits.  N.J.S.A. § 10:5-12(d); Cortes v. Univ. of Med. & Dentistry of N.J., 391 F.Supp.2d 298, 314 (D.N.J. 2005). To set forth a prima facie case of retaliatory discharge, an employee is required to show that (1) the employee engaged in protected activity known to the employer, (2) the employee was thereafter subjected to an adverse employment action, and (3) there was a causal link between the two.  Winters, 2008 WL 680732, at *10.

An employee engages in protected activity under NJLAD when the employee opposes, or complains about, conduct that amounts to a discriminatory practice that is based on race, color, sex, religion, national origin, or some other statutorily enumerated basis.  Chambers v. Heidelberg USA, Inc., No. 04-583, 2006 WL 1281308, at *10 (D.N.J. May 5, 2006).  A request for accommodation for a disability can also constitute protected

activity under NJLAD.  <u>Connolly v. Mitsui O.S.K. Lines (Am.),</u> <u>Inc.</u>, No. 04-5127, 2007 WL 4207836, at *5-*6 (D.N.J. Nov. 21, 2007); <u>Grazioli v. Genuine Parts Co.</u>, 409 F.Supp.2d 569, 584 (D.N.J. 2005).[4]

If the employee establishes a prima facie case, then the burden of going forward shifts to the employer to articulate some legitimate non-retaliatory reason for the adverse action. <u>Winters</u>, 2008 WL 680732, at *10.  If the employer articulates such a reason, the employee must demonstrate by a preponderance of the evidence that a discriminatory intent motivated the employer's action.  <u>Id.</u>  The employee can so demonstrate by proving that the articulated reason is a pretext for the retaliation or that a discriminatory reason was more likely the employer's motivation.  <u>Id.</u>  If the employee meets this burden, then a presumption of retaliatory intent arises that the employer can dispel by proof, by a preponderance of the evidence, that the employer would have taken the adverse action regardless of retaliatory intent.  <u>Id.</u>

The Court will deny defendants' motion to dismiss plaintiffs' claim under Count Four.  Plaintiffs allege that (1)

---

[4] The court in <u>Connolly</u> noted that a request for accommodation is a protected activity under the Americans with Disabilities Act ("ADA"), and thus is a protected activity under NJLAD as well.  <u>Connolly</u>, 2007 WL 420836, at *5-*6; <u>see also</u> <u>Lawrence v. Nat'l Westminster Bank N.J.</u>, 98 F.3d 61, 70 (3d Cir. 1996) (holding that ADA and NJLAD claims governed by same standards).

Barboza engaged in protected activity by putting defendants on notice of her intention to undergo gastric bypass surgery and use her vacation time for the surgery and recovery, (2) she was thereafter terminated, and (3) her health insurance coverage for the surgery was eliminated.  (2d Am. Compl., at 3, 5.) Plaintiffs have sufficiently "raise[d] a right to relief above the speculative level", as the allegations, if proven, would show that defendants retaliated against Barboza by terminating her when she engaged in the protected activity of requesting accommodation for treatment for her disability, obesity.  See Twombly, 127 S.Ct. at 1965; Connolly, 2007 WL 4207836, at *6 (denying 12(b)(6) motion to dismiss as to plaintiff's retaliation claim under NJLAD, as plaintiff alleged retaliation following request for accommodation for disability).  Whether Barboza's request for accommodation was sufficient is a factual issue to be resolved at a later juncture, as noted supra.

### III. Violation of Public Policy Claim

Plaintiffs allege that defendants' conduct violated public policy.  (2d Am. Compl., at 4-5.)  Under New Jersey law, NJLAD preempts common law claims seeking remedies identical to those that are found under NJLAD.  Rivera v. Cracker Barrel Old Country Store, Inc., No. 02-4160, 2003 WL 21077965, at *3-*4 (D.N.J. Mar. 3, 2003) (granting motion to dismiss under Rule 12(b)(6) as to plaintiff's common law wrongful discharge claim that was

12

"entirely predicated upon the alleged actions of the [d]efendant which give rise to the NJLAD claim", and plaintiff sought "redress for physical and emotional stress as well as economic loss, injuries which are clearly recoverable under the NJLAD"); DeJoy v. Comcast Cable Commc'ns Inc., 941 F.Supp. 468, 475-76 (D.N.J. 1996) (granting motion to dismiss pursuant to Rule 12(b)(6) because plaintiff's common law wrongful discharge claim no "different or broader" than NJLAD claim, and sought recovery for the same wrongs alleged in NJLAD claim).

The Court will grant defendants' motion to dismiss plaintiffs' claim under Count Three.  Plaintiffs allege that defendants' conduct constituted a violation of public policy because they (1) "dismissed [Barboza] because of her intention to obtain treatment for her handicap, which would not have any adverse [e]ffect on [defendants]", and (2) "had a duty to provide a reasonable accommodation, if the surgery was to have any effect on [their] operations." (2d Am. Compl., at 4-5.)  Because the factual allegations here are "entirely predicated" on the same set of allegations that give rise to plaintiffs' NJLAD claims, this claim is no "different or broader" than plaintiffs' NJLAD claims, and thus is preempted by NJLAD.  See Rivera, 2003 WL 21077965, at *3-*4; DeJoy, 941 F.Supp. at 475-76.

## IV.   IIED Claim

Plaintiffs also allege an IIED claim.  (2d Am. Compl., at 8.)  To support this claim, plaintiffs must show that (1) defendants acted intentionally or recklessly, (2) defendants' conduct was extreme and outrageous, (3) defendants' actions were the proximate cause of the plaintiff's emotional distress, and (4) plaintiffs' distress was so severe that no reasonable person could be expected to endure it.  Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988).  Plaintiffs must prove that the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Id. (quotation and citation omitted).  "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not give rise to liability for IIED. Taylor v. Metzger, 152 N.J. 490, 509 (1998) (quotation and citation omitted).

The Court will grant defendants' motion to dismiss plaintiffs' claim under Count Six.  The second amended complaint, even construed most favorably to plaintiffs, asserts that defendants' conduct in both dismissing Barboza and changing medical coverage constituted an intentional infliction of emotional distress that in fact had caused severe emotional distress on the part of Barboza.  (2d Am. Compl., at 8.)  The

14

Court finds that defendants' conduct did not rise to the level necessary to maintain a claim for IIED.  "The limited scope of this tort tolerates many kinds of unjust, unfair and unkind conduct."  Fregara v. Jet Aviation Bus. Jets, 764 F.Supp. 940, 956 (D.N.J. 1991) (citation omitted).  Indeed, except in the case of aggravated discriminatory conduct, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) (applying Pennsylvania law); Griffin v. Tops Appliance City, 337 N.J.Super. 15, 23-24 (App.Div. 2001).

"The mere fact that the [d]efendants acted for an improper purpose does not give rise to an actionable claim."  Marrero v. Camden County Bd. of Soc. Servs., 164 F.Supp.2d 455, 479 (D.N.J. 2001).  Moreover, "allegations of sexual harassment, discrimination, or improperly motivated discharge, cannot alone provide the basis for an intentional infliction of emotional distress claim."  Id.[5]  Also, claims regarding employment

---

[5] See, e.g., Ferraro v. Bell Atl. Co., 2 F.Supp.2d 577, 589 (D.N.J. 1998) (finding that plaintiff's claims of sexual harassment, discrimination, name-calling and physical intimidation did not establish a claim for intentional infliction of emotional distress); Nichols v. Acme Mkts., 712 F.Supp. 488, 495 (E.D. Pa. 1989) ("Racial discrimination alone, like sexual harassment alone, does not state a claim for intentional infliction of emotional distress.").

decisions fail to state a claim as for intentional infliction of emotional distress as a matter of law.  Borecki v. E. Int'l Mgmt. Corp., 694 F.Supp. 47, 61 (D.N.J. 1988).

The Court further finds that plaintiffs have failed to allege that defendants caused emotional distress so severe that no reasonable person could be expected to endure it.  (See 2d Am. Compl., at 8.)  Plaintiffs are required at least to allege the kind of illness or stress they endured for their claim to survive a motion to dismiss.  Buckley, 111 N.J. at 368-69.  Mere allegations of aggravation or embarrassment, without more, are insufficient for a claim of IIED.  See id. at 368 (concluding complaints of "aggravation, embarrassment, an unspecified number of headaches, and loss of sleep" insufficient to establish severe emotional distress); see also Lascurain v. City of Newark, 349 N.J.Super. 251, 280 (App.Div. 2002) (noting that for emotional distress to be sufficiently severe, dramatic impact on ability to function daily usually must be shown).  Plaintiffs' allegation of "severe emotional distress" is thus insufficient to support an IIED claim.  (See 2d Am. Compl., at 8.)

Plaintiffs also have failed to allege the particular type of illness or stress that Barboza suffered because of defendants' conduct.  (See id.)  Plaintiffs must assert that Barboza sought treatment for her alleged distress.  Mardini v. Viking Freight, Inc., 92 F.Supp.2d 378, 384-85 (D.N.J. 1999)

16

(granting motion to dismiss IIED claim because plaintiff did not seek medical assistance or allege specific ailments); <u>Harris v. Middlesex County Coll.</u>, 353 N.J.Super. 31, 47 (App.Div. 2002) (affirming IIED dismissal where plaintiff failed to allege need for psychiatric counseling); <u>Aly v. Garcia</u>, 333 N.J.Super. 195, 205 (App.Div. 2000) (stating IIED claim should be dismissed where no evidence that plaintiffs sought medical treatment for alleged distress).  Plaintiffs have not alleged that Barboza sought medical treatment for her alleged distress.  (<u>See</u> 2d Am. Compl., at 8.)

**V.   Per Quod Claim**

A claim for loss of consortium arises from the marital relationship and is based on the loss of a spouse's services and companionship resulting from an injury.  <u>See</u> <u>Kibble v. Weeks Dredging & Constr. Co.</u>, 161 N.J. 178, 190 (1999) (explaining that "loss of consortium, or <u>per quod</u>, claim is intended to compensate a person for the loss of a spouse's 'society, companionship and services due to the fault of another'").  A loss of consortium claim is a derivative claim, "depend[ing] upon the existence of <u>tortious conduct</u> on the part of the defendants."  <u>Horvath v. Rimtec Corp.</u>, 102 F.Supp.2d 219, 236 (D.N.J. 2000) (emphasis added); <u>see</u> <u>Murray v. Com. Union Ins. Co.</u>, 782 F.2d 432, 438 (3d Cir. 1986) (stating wife's right to recover in tort is derivative to that of her husband).

17

NJLAD does not support a loss of consortium claim by a claimant's spouse.  Cluney v. Mon-Oc Fed. Credit Union, No. A-4472-04T5, 2006 WL 2128985, at *17 (N.J. App.Div. Aug. 1, 2006); Catalane v. Gilian Instrument Corp., 217 N.J.Super. 476, 499-500 (App.Div. 1994).  Therefore, to the extent that plaintiff Kenneth Barboza's loss of consortium claim is ancillary to Barboza's NJLAD claim, his claim is not viable.

Plaintiffs have also alleged a claim for IIED, as set forth supra.  However, as discussed supra, the second amended complaint does not adequately state a claim for IIED.  Thus, because the plaintiffs have not alleged a cognizable tort claim, plaintiff Kenneth Barboza cannot maintain his derivative loss of consortium claim.

CONCLUSION

The Court, for the reasons stated supra, will grant in part and deny in part defendants' motion to dismiss the second amended complaint.  The Court will issue an appropriate order and judgment.

                                    s/ Mary L. Cooper
                                **MARY L. COOPER**
                                United States District Judge

Dated:    July 22, 2008

18